1 ROB HENNIG (STATE BAR NO. 174646)
ROB@EMPLOYMENTATTORNEYLA.COM
2 SAMUEL MARION BROWN (STATE BAR NO. 308558)
SAM@EMPLOYMENTATTORNEYLA.COM
3 HENNIG RUIZ P.C.
1925 CENTURY PARK EAST, SUITE 1960
4 LOS ANGELES, CA  90067
PHONE: (310) 843-0020
5 FAX: (310) 843-9150

6 Attorneys for Plaintiffs MARCELLA NAVARRETE
and JOSE CASTENADA

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12 MARCELLA NAVARRETE, an ) CASE NO.  2:16-cv-01230-PA-AFM
individual, JOSE CASTANEDA; an )
13 individual )
)
14 Plaintiff, ) **FIRST AMENDED COMPLAINT**
) **FOR:**
15 vs. )
) **1.    42 U.S.C. § 1983: EXCESSIVE**
16 JESSIE ARANA, an individual named ) **FORCE IN VIOLATION OF**
in his personal capacity; CHRIS ) **THE FOURTH AND**
17 STEVENS, an individual named in his ) **FOURTEENTH AMENDMENT**
personal capacity; and MICHELLE ) **2.    42 U.S.C. § 1983:**
18 KING; in her official capacity as ) **RETALIATORY ARREST IN**
Superintendent of Los Angeles ) **VIOLATION OF THE FIRST**
19 Unified School District ) **AND FOURTEENTH**
) **AMENDMENT**
20 Defendants. ) **3.    42 U.S.C. § 1983:**
) **UNLAWFUL RESTRAINT OF**
21 ) **THE RIGHT TO FREE**
) **SPEECH IN VIOLATION OF**
22 ) **THE FIRST AND**
) **FOURTEENTH AMENDMENT**
23 )
) **AND DEMAND FOR JURY TRIAL**
24 _____ )

25

26

27

28

HENNIG
RUIZ P.C.

-1-

## **STATEMENT OF JURISDICTION**

1.     This is an action brought under 42 U.S.C. § 1983 to recover damages against defendants for violations of Plaintiffs' right against unlawful search and seizure guaranteed by the Fourth and Fourteenth amendment, and for violations of Plaintiffs' right to free speech guaranteed by the First and Fourteenth amendment. The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

2.     Plaintiff, Marcella Navarrete, is, and at all times mentioned in this complaint was, a citizen of the United States, and a resident of Los Angeles, California.

3.     Plaintiff, Jose Castaneda, is, and at all times mentioned in this complaint was, a citizen of the United States, and a resident of Los Angeles, California.

4.     Defendant Officer Jessie Arana, and at all times mentioned in this complaint was, a resident of Los Angeles County, California.  Venue is therefore proper under 28 U.S.C. §1391(b).

5.     Defendant Officer Lieutenant Chris Stevens, is, and at all times mentioned in this complaint was, a resident of Los Angeles County, California. Venue is therefore proper under 28 U.S.C. §1391(b).

6.     A substantial part of the events giving rise to this action occurred in Los Angeles County, California. Venue is therefore proper under 28 U.S.C. § 1391(b).

7.     Defendant Arana was, at all times mentioned in this complaint, a police officer employed by the Los Angeles Unified School District Police Force ("LAUSDPF"), a locally funded agency.

8.     Defendant Arana was, at all times mentioned in this complaint, acting in the course and scope of his employment with the LAUSDPF.  Defendant Arana is named in his personal capacity and is sued for damages.

///

Hennig Ruiz p.c.

9.     Defendant Stevens was, at all times mentioned in this complaint, was a police officer with the rank of Lieutenant, employed by LAUSDPF. Defendant Stevens is named in his personal capacity and is sued for damages.

10.     Defendant Stevens was, at all times mentioned in this complaint, acting in the course and scope of his  employment with the LAUSDPF.

11.     Defendant King, is the current Superintendent of Los Angeles  Unified School District ("LAUSD"), the entity with ultimate control over LAUSDPF. Defendant King is named in her official capacity and is sued for injunctive relief only.

12.     Defendants Arana, Stevens, and King were, at all times mentioned in this complaint, acting under color of state law.

13.     Defendant Arana is sued in his personal capacity.

14.     Defendant Stevens is sued in his personal capacity.

15.     Defendant King is sued in her official capacity as Superintendent of LAUSD.

### FACTS

16.     Plaintiff Navarrete is a 53-year old Video journalist employed full time by the National Broadcast Channel ("NBC").  She has worked as a video journalist for approximately 23 years in the Los Angeles area.

17.     As part of her employment Navarrete is sent to cover breaking news stories.  She brings a camera and shoots footage that she then edits for use by NBC and NBC affiliates.

18.     Navarrete, at all relevant times had her press credential registered with the Los Angeles Police Department ("LAPD").

19.     On or around the morning of October 15, 2013, at approximately 10:00AM Navarrete was sent to cover an incident at 21040 Hart Street, in Canoga Park, California.  She was accompanied by her intern.

HENNIG
RUIZ P.C.

-3-

20.    Navarrete was sent to cover a developing story at a local high school at that location.

21.    When Navarrete arrived on location she parked her car on Hart Street, on the opposite side of the street as the school.  Hart Street runs directly in front of the main entrance of the school.  She did so because officers from LAPD had closed off the two streets–Variel Avenue and Independence Avenue--that ran perpendicular to Hart and border the school.

22.    After parking her car, Navarrete took her camera out of her van and stood on the sidewalk, on the opposite side of Hart from the school.

23.    At the time Navarrete began filming there were no police personal on Hart Street and no yellow tape indicating that where she was standing was a restricted area or a crime scene.  As she began filming numerous pedestrians were walking by Navarrete on the side walk and cars were also driving down Hart Street.

24.    Plaintiff Navarrete is informed and believes, and thereon alleges that it is common practice for the LAPD to mark off crime scenes or other restricted access areas with yellow tape.  In Navarrete's twenty plus years working as a video journalist she has respected properly marked off restricted areas.

25.    Based on Navarette's experience, she believed she was entitled to stand on the sidewalk on Hart Street because 1) the area had not been marked as "restricted" with yellow tape, and 2) pedestrians were moving in and out of the area without restriction.

26.    Plaintiff is informed and believes, and thereon alleges that under long standing police custom, practice, and policy, the press is allowed to stand on any public area that has not been marked restricted using yellow tape, or some equivalent designation.

27.    While Plaintiff Navarrete was filming the front of the school, with her camera held up to her eye, LAUSDPF officer and Defendant Jess Arana, without issuing a verbal warning, pushed Plaintiff Navarrete's camera back into her face

HENNIG
RUIZ P.C.

-4-

then down away from her face.  Plaintiff Navarrete did not see Officer Arana approaching because she was looking through the lens of her camera and was holding the lens up to her eye – something that Defendant Arana should have obviously seen.

28.    Defendant did not say anything to Navarrete before knocking her camera.  After he knocked Navarrete's camera into and away from her eye, Arana, who was in uniform, shouted "Move. . .you cannot film here." Navarrete responded "Why?  Where is the yellow tape?  Is this a crime scene?"  Defendant Arana responded with  "No, Just move. . .you cannot film here at all." Navarrete then told Defendant Arana that she believed she had a legal right to stand on a public sidewalk and take footage and that she would call her boss to confirm that she was allowed to do so.  Arana allowed Navarrete to speak with her boss over the phone. Navarrete's boss confirmed for Navarrete that as long as the scene is not marked a crime scene, Navarrete was allowed to stand on a public sidewalk and film. Plaintiff's boss told her to show Defendant Arana her press badge.  After putting away her phone. Navarrete showed Arana her press badge, and said "I am protected by the right of free speech to film here.  I am protected by the Constitution."

29.    Officer Arana grabbed Plaintiff's press badge–on a lanyard around Plaintiff's neck–and attempted to yank it off.  Defendant Arana's forceful action pulled Plaintiff's neck down toward her chest.  Defendant than said, "I am going to put you under arrest."  Plaintiff responded, "Why?"  Defendant answered to "Give me your license."  At that point Plaintiff began to fear that Defendant planned to use force on her.  She said "Please go slowly, I have an injury.  Please let me put my camera down.  My license is in my truck."  Plaintiff took one step toward her truck, and placed her camera down with her right hand.  Defendant immediately grabbed her right hand and pulled it behind Plaintiff's back, and attempted to raise it high up along her back.  Plaintiff screamed in pain and began to cry. Plaintiff Navarrete, as she told Defendant Arana, had a previous injury to her right shoulder

and Defendant Arana's unnecessary use of force in placing Plaintiff's hand behind her back – before she even could obey Defendant Arana's order to retrieve her license – aggravated Navarrete's shoulder injury.  The pain was so severe Plaintiff screamed and cried.  Defendant Arana then released Plaintiff's injured arm and yelled at her to sit down on the curb.  Plaintiff sat down on the curb as ordered. Defendant Arana never placed handcuffs on Navarrete, nor did he attempt to arrest her.  His only action was to physically rip her arm up behind her back.

30.     The Defendant Arana then told Plaintiff that he "knew people at LAPD" and that if he wanted to "he could have her press pass taken away." He then told her "You are the not press, I know the press, and you are not the press." Plaintiff would be unable to do her job if her pass was taken away and she became frightened.  She believed the Defendant Arana was threatening to take her pass away if she told anyone that he had injured her shoulder or if she complained about him preventing her from filming on a public sidewalk. Defendant Arana told Plaintiff that "he was doing her a favor" and ordered her to "go home and be a good girl."  Fearing further injury if she remained and once again attempted to exercise her right to take footage for the news–protected by the First Amendment--Plaintiff drove away.  Plaintiff also left in fear that had she stayed, Defendant Arana would succeed in having her press pass taken away resulting in Plaintiff's termination. Plaintiff left the scene without having been able to complete the filming she had been assigned to do by her employer.

31.     Plaintiff is informed and believes, and thereon alleges that Defendant Arana –as a member of the Los Angeles Unified School District Police Force – lacked correct legal authority to order Plaintiff off a public sidewalk that was not on, or even adjacent to property owned or leased by Los Angeles Unified School District.  Plaintiff is informed and believes and thereon alleges Defendant Arana possessed no legal authority over non-students located off of District property at all.

HENNIG
RUIZ P.C.

-6-

32.     Plaintiff is informed and believes, and thereon alleges that Defendant Arana hit Plaintiff's camera, applied force to her shoulder, and threatened to have her press pass taken away in order to prevent Plaintiff from capturing the name of the school–displayed prominently on a sign facing Hart Street–on camera.  Plaintiff is informed and believes and thereon alleges Defendant Arana took these actions with full knowledge that Plaintiff was not violating any law nor was any threat to public safety by standing where she was.  In fact, Plaintiff is informed and believes and thereon alleges that Defendant Arana had full knowledge that Plaintiff Navarrete had a First Amendment right to take footage from that public sidewalk where she was.

33.     Plaintiff believes that Defendant's statement "You are not the press" was a reference to the fact that Navarrete works for Spanish media and not English language television.  Plaintiff has, in the past, been treated differently by other police officers than her colleagues who work as video journalists for English language television networks.

34.     Plaintiff believes Defendant Arana threatened to remove her press pass and ordered her to go home so that she would not tell anyone of the actions he took – including his excessive use of force in injuring Plaintiff's arm.  Plaintiff is also informed and believes and thereon alleges that Defendant ordered her to go home in order to prevent her from exercising her First Amendment right to perform video journalism, in part in retaliation for Plaintiff asserting her First Amendment rights.

35.     As a result of Defendant Arana's violent pulling of Navarrete's arm behind her back, she had severe pain in her right shoulder for the rest of the day.  This pain has continued to today.  The injury was particularly painful and damaging to Navarrete because the pain would increase and her right shoulder would become aggravated anytime she held her camera.  Because Navarrete was required to hold her camera for almost all of her work assignments as a video

-7-

[PROPOSED] FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

journalist, and use her right shoulder to do so, she suffered the effects of Defendant's excessive use of force and civil rights violations against her on a daily basis.   In the weeks that followed the incident, Navarrete's shoulder became more and more painful and at times prevented her from being able to carry her camera for work.

36.   During the weeks after this incident, Navarrete feared that if she took time off to heal she would lose her job.  She saw several doctors who recommended either expensive surgery–that would require Navarrete to stop working for 3-4 months–or prescribed pain medication.  As a result of continued pain, Plaintiff Navarrete had no choice but to take the medication as prescribed.  If she were to get surgery she feared she would lose her job.  Taking the medication as prescribed resulted in Navarrete suffering from severe anxiety.  Navarrete continued to fear the pain would get so bad that she would not be able to work. This fear of losing her job, and her career, also caused Navarrete to suffer severe anxiety and emotional distress.  All of Plaintiff Navarrete's emotional distress following Defendant Arana's actions occurred as a reasonable and foreseeable result of Defendant's conduct.

37.   Several weeks after the incident Plaintiff Navarrete and her boss met with Defendant Chris Stevens, who was Arana's supervisor at the time of the incident.  Stevens took Navarrete's declaration and told her that he would investigate the incident and then contact Plaintiff about the results of his investigation. This is in person meeting was set up on a phone call that occurred approximately one week after the incident, in which Navarrete spoke with Stevens and described the incident and her interest in pursuing a formal complaint against Arana. After Stevens took her statement, Navarrete, nor her boss ever heard from anyone at LAUSDPF again.

///

///

HENNIG
RUIZ P.C.

-8-

38.     Navarrete is informed and believes and thereon alleges that Stevens took no action to investigate her complaint, and only took her statement in the hopes of using that statement against her were she to file a formal case.

39.     Navarrete is informed and believes and thereon alleges that Stevens deliberately failed to discipline Arana for actions that Stevens knew had violated Plaintiff's constitutional rights and were an excessive use of force.

40.     Plaintiff Navarrete is informed and believes and thereon alleges Defendant King, and LAUSDPF provide no training to LAUSDPF officers relating to the constitutional rights associated with video journalists.  Plaintiff is informed and believes that LAUSDPF and King were aware of Arana's acts as well as Navarrete's complaint.

41.     On or around the morning of October 15, 2013, at approximately 9:00 a.m., Plaintiff Jose Castenada was sent to cover an incident at 21040 Hart Street, in Canoga Park, California.  He was a free lance video journalist and had been one for approximately two years.

42.     Castenada parked on Hart Street, on the opposite side of the school, approximately ten feet from the corner of Hart and Variel Avenue. When he got out his car he saw LAPD officers at the corner and that they had taped off an area of Variel Avenue and blocked traffic.

43.     Castenada pulled his camera and tripod out of his car and began to prepare to film the school.  Defendant Arana approached him and said, "You cannot be here, you need to go to the command center."  Castenada was standing on a public sidewalk and not inside of any marked off area.  It was Castenada's understanding that, if a public sidewalk was not taped off he had a First Amendment right to stand there and take footage.  Castenada asked Defendant Arana if he could get a few minutes of film and be on his way.  Arana responded "No. Get out of here."  Castenada then asked, "Can you explain to me why I cannot be here?"  Arana then said "I am going to arrest you," and grabbed Castenada's

Hennig
Ruiz p.c.

-9-

1  right arm–with which he was holding his camera.  Defendant Arana then grabbed

2  his left arm and brought both of Castenada's hands behind his back.  Plaintiff

3  Castenada asked Arana, "Why are you doing this?" Arana responded, "Be quiet and

4  turn around. . .give me your license."  Arana allowed Castenada to hand Arana his

5  license.   He then told him to "keep his hands behind his back." Arana took the

6  license and went to his car to run a warrant check on Castenada.  Castenada was

7  wearing his press pass in a visible location during this entire time.

8       44.     At the time that Castenada was filming on the public sidewalk,

9  Castenada was not breaking any law.  At the time that Castenada was filming on

10  the public sidewalk, Castenada was not a threat to public safety.  Instead, Plaintiff

11  was exercising his First Amendment right to film in an area that was newsworthy at

12  the time.

13       45.     Approximately twenty minutes later, Defendant Arana returned from

14  his car, gave Castenada his license back and told him, "I am going to let you go,

15  but if I see you hear again I will arrest you."  Defendant Arana provided no specific

16  reason why he would arrest Castenada, instead just issued the bare threat that he

17  would.  Plaintiff Castenada interpreted Defendant Arana as stating that, even if

18  Plaintiff Castenada were to return and not commit any crime or not be a danger to

19  public safety, he would be arbitrarily arrested by Arana if he exercised his first

20  amendment right to film.

21       46.     Castenada asked Arana for his name and badge number. Defendant

22  Arana gave him that information.  Plaintiff Castenada then packed up his camera

23  and left without completing the intended footage.  As a result, Plaintiff was unable

24  to get paid for the footage.  Plaintiff was also humiliated and suffered emotional

25  distress at being detained against his will, having his license run, and being told if

26  he attempted to come back to do his job he would be arrested regardless of the law.

27  Castenada was unable to exercise his First Amendment right to videotape the

28  incident on the day in question.

HENNIG
RUIZ P.C.

-10-

47.     Later that day, Plaintiff Castenada contacted Defendant Stevens at LAUSDPF and lodged a complaint about Defendant Arana's actions.  Defendant Stevens told Castenada that Plaintiff's complaint would be taken "very seriously." Castenada was never informed of any corrective action taken.  Plaintiff is informed and believes, and thereon alleges that Defendant Stevens never took any steps to discipline Arana for his actions.

## EQUITABLE TOLLING

48.     The statute of limitations applicable to Plaintiffs' causes of action 1-3, should be tolled pursuant to the doctrine of equitable tolling because Plaintiff was possessed of several legal remedies.  Rather than filing this action Plaintiffs reasonably and in good faith pursued a remedy, or remedies designed to compensate plaintiffs for their injuries. Defendants received timely notice of plaintiffs' claims within the applicable statute of limitations period and there is no prejudice to defendant. As such, the doctrine of equitable tolling offers relief from a bar based on the statute of limitations.

49.     In the hours and days following the October 15, 2013 incidents alleged herein, Plaintiffs both contacted LAUSDPF and Defendant Stevens regarding the actions of Defendant Arana.  Defendant Stevens told both Plaintiffs in separate phone conversations that, as a result of their complaints, LAUSD would conduct an internal investigation into Arana's actions.  Stevens told both Plaintiffs he would be in touch with them in one to two weeks.  Approximately two weeks later, Defendant Stevens met with Plaintiff Navarrete in person and took her statement regarding the events of October 15, 2013. Navarrete provided a comprehensive account of the events and conveyed her interest in pursuing the complaint against Arana.  At the conclusion of the meeting Stevens told Navarrete he would contact her after the investigation was concluded and let her know how he could address

1    her complaint at that time.  Navarette never heard from Stevens, or anyone else at

2    LAUSD again.

3        50.    Defendant Stevens learned all of the material factual allegations

4    contained in this Complaint through his initial conversation with both Plaintiffs

5    and his official taking of Navarrete's statement.

6        51.    Plaintiffs are informed and believe and thereon allege that Defendant

7    Stevens informed Defendant Arana of the factual allegations contained in

8    Plaintiffs' internal complaints.

9        52.    After Navarrete did not hear back from LAUSDPF for over a month,

10   she filed a complaint for damages with the City of Los Angeles.  Around the same

11   time, Plaintiff Castenada also filed a complaint for damages with the City of Los

12   Angeles.  Plaintiffs filed their complaints under the reasonable belief that the City's

13   internal complaint procedure was an appropriate available remedy to them upon

14   hearing nothing back from LAUSDPF.

15       53.    Plaintiff Navarrete received a notification from the City of Los

16   Angeles on April 17, 2014 denying her claim on the basis that Defendants were not

17   City employees.

18       54.    Plaintiff Castaneda received a notice from the City of Los Angeles that

19   his complaint was received and was being investigated on April 14, 2014.

20       55.    Castaneda received a letter from the City of Los Angeles on May 22,

21   2014, officially denying his claim on the basis that Defendant officers were not

22   employed by the LAPD.  Both communications from the City directed Plaintiffs

23   back to LAUSD, whom they had been told months earlier were undertaking an

24   investigation.

25       56.    Under California's equitable tolling doctrine the statute of limitations

26   should be tolled from the day Plaintiffs were informed by LAUSD that an

27   investigation would be conducted and LAUSD would contact Plaintiffs upon its

28   completion, until at least the date the City of Los Angeles informed Plaintiffs their

HENNIG
RUIZ P.C.

-12-

only administrative remedy was with LAUSD.  This is because, from the days following the incident Plaintiffs reasonably and in good faith sought an alternative remedy for their harms, first through an internal complaint to LAUSD, and then with the City.  It was only after the City of Los Angeles informed Plaintiffs LAUSD was the only entity with which they could pursue an administrative remedy that Plaintiffs realized an administrative complaint was unlikely to remedy their harms.

57.    Plaintiffs are informed and believe and thereon allege that LAUSD never completed any investigation. Plaintiffs were never contacted, or notified as to the results, or status of their complaints.

58.    For Navarrete, the limitations period should be tolled from approximately one week following the October 15, 2013 incident until April 14, 2014, for a total of approximately 170 days. This would extend the statutory period for filing her claim to approximately April 1, 2016.   Plaintiffs' Complaint was filed February 23, 2016, and would therefore be well within the time limit. Castaneda's  applicable tolling period should begin the day of the incident, when he called LAUSDPF to initiate his complaint.  This would make his February 23, 2016 filing timely.

59.    Defendants would not be prejudiced by the tolling of the statute because Defendants had been informed of the factual basis for Plaintiffs' Complaint within weeks of the incident. In fact, Defendant Stevens represented to both Plaintiffs that he would conduct a thorough investigation, including taking Navarrete's statement.

60.    Plaintiffs are informed and believe and thereon allege that it is the practice of the City of Los Angeles, and LAUSD to take up to six months to review internal complaints so that potential Plaintiffs have shortened periods in which to file Civil complaints.

///

HENNIG
RUIZ P.C.

-13-

61.     Plaintiffs are informed and believe, and thereon allege that Defendant Stevens had no intention of reporting the details of his investigation to Plaintiffs. Rather, Stevens intention was to use that time to gather information that would be useful to any possible legal defense and leave Plaintiffs in limbo as to the status of their complaints.

62.     Defendants would not be prejudiced by the tolling of the statute because Defendants had been informed of the factual basis for Plaintiffs' Complaint within weeks of the incident. In fact, Defendant Stevens represented to both Plaintiffs that he would conduct a thorough investigation, including taking Navarrete's statement.

**FIRST CAUSE OF ACTION**

**VIOLATION OF 42 USC § 1983 FOR USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH and FOURTEENTH AMENDMENTS**

**(Against Defendant Arana in his personal capacity, Defendant Stevens in his personal capacity, and Defendant King in her official capacity.)**

63.     As a separate and distinct cause of action, Plaintiffs complain and re-allege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.  Plaintiffs bring this cause of action against Defendant Arana in his personal capacity, Defendant Stevens in his personal capacity, and Defendant King in her official capacity.

64.     Defendant Arana, as a police officer, in uniform acted under the color of law.  Specifically, Defendant Arana physically grabbed and detained both Plaintiffs in an exercise of his authority, and threatened to arrest both Plaintiffs if they did not leave the area.

///

Hennig
Ruiz p.c.

-14-

65.     Defendant Arana deprived Plaintiffs of their rights against unlawful search and seizure, that includes the right to be free from the use of excessive force. This right in contained in the Fourth and Fourteenth Amendments to the United States Constitution.

66.     Defendant Stevens, as a police officer and supervisor acted under the color of law.  Specifically, Stevens failed to train Defendant Arana properly such that Defendant Arana violated the constitutional rights of Plaintiffs.  Defendant Stevens failure to reprimand or discipline Defendant Arana, furthermore, ratified Defendant Arana's conduct of violating Plaintiffs' constitutional rights through the use of excessive and unnecessary force.

67.     Defendant Stevens, in his ratification of the conduct of Defendant Arana among other things, deprived Plaintiffs of their rights against unlawful search and seizure, that includes the right to be free from the use of excessive force. This right in contained in the Fourth and Fourteenth Amendments to the United States Constitution.

68.     Defendant King, in her official capacity as superintendent of LAUSD failed to implement proper training protocols for LAUSDPF police officers, specifically in dealing with media members covering stories around schools and the use of force.

69.     As a result of Defendant King's failure to provide proper training protocols in general and specifically to Defendant Arana, Defendant King deprived Plaintiffs of their rights against unlawful search and seizure, that includes the right to be free from the use of excessive force.  This right in contained in the Fourth and Fourteenth Amendments to the United States Constitution

70.     As a direct and proximate result of Defendants' actions, described in this complaint, Plaintiffs have suffered injury, in that Plaintiff Navarrete's arm and shoulder were severally injured and remain injured. She also has suffered, and continues to suffer emotional distress. Defendants injured Plaintiff Castenada by

HENNIG
RUIZ P.C.

-15-

depriving him of his constitutional rights, detaining him for twenty minutes, and causing him emotional distress, and injury to his dignitary.

71.     In acting as is alleged in this complaint, Defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiffs' federally protected rights.

## SECOND CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983:  RETALIATORY ARREST IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

**(Against Defendant Arana in his personal capacity, Defendant Stevens in his personal capacity, and Defendant King in her official capacity.)**

72.     As a separate and distinct cause of action, Plaintiffs complain and re-allege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.  Plaintiffs bring this cause of action against Defendant Arana in his personal capacity, Defendant Stevens in his personal capacity, and Defendant King in her official capacity.

73.     Defendant Arana, as a police officer, in uniform acted under the color of law.  Specifically, Defendant Arana physically grabbed and detained both Plaintiffs in an exercise of his authority, and threatened to arrest both Plaintiffs if they did not leave the area. He also repeatedly ordered both Plaintiffs, asserting his authority as a police officer.

74.     Defendant Arana detained, arrested, and/or threatened to arrest Plaintiffs in retaliation for Plaintiffs' attempt to exercise their Constitutional Right to take video footage for news reports and in doing so deprived Plaintiffs of their right to take video footage protected by the First and Fourteenth Amendments. Specifically, Defendant Arana's acts amounted to a retaliatory arrest and detention that chilled Plaintiffs in the exercise of their First and Fourteenth Amendment

rights.  Defendant Arana also deprived Plaintiffs of their right to free speech, by retaliating against Plaintiffs for invoking their free speech right to conduct video journalism. Specifically, both Navarrete and Castenada told Defendant Arana they had a legal right to take video footage as both were press reporters with press passes prominently displayed, thus invoking their rights under the Constitution.  In response, and in retaliation for asserting that right, Defendant Arana physically injured Navarrete, threatened to have Navarrate's press pass taken away, and unlawfully detained Castenada.  Defendant Arana also deprived Plaintiffs of their free speech rights by threatening to arrest both Plaintiffs if they did not pack up and leave, without taking any footage.  This threat was a deliberate attempt to chill Plaintiffs' exercise of their First Amendment rights, and represents a type of prior restraint on the exercise of their First Amendment right to produce video news contents for broadcast purposes. Plaintiffs' right to video record newsworthy footage from a safe distance and without any threat to public safety – as both Plaintiffs were doing at the time of Defendant Arana's conduct toward them – is contained in the First and Fourteenth Amendments to the United States Constitution.

75.     Plaintiffs are informed and believe and thereon allege that Arana's actions–arrest and/or detention, threats of arrest, and threat to take Navarrete's press pass away–would chill a person of ordinary firmness from engaging in future First Amendment activity, including both the taking of video footage by journalists and/or asserting Constitutional rights when questioned by law enforcement officers.

76.     Plaintiffs are informed and believe and thereon allege that Defendant Arana took these actions with the intention and in order to chill Plaintiffs' exercise of their right to take video footage at or around the school on the day in question, or in the future in violation of Plaintiffs' constitutional rights.  Specifically, as alleged above, Defendant Arana's intent was to prevent either Plaintiff from

HENNIG
RUIZ P.C.

-17-

capturing the name of the school on camera.  Plaintiffs are further informed and believe, and thereon allege that Defendant Arana's motivation to chill Plaintiffs' speech and press rights was the but-for cause of his conduct on the day in question.

77.    Plaintiffs are informed and believe and thereon allege, that the unconstitutionality of Defendant Arana's acts was a matter well established law at the time of those actions, such that a reasonable law enforcement officer would have known such actions violate Plaintiffs' constitutional rights.

78.    Defendant Stevens, as a police officer and supervisor acted under the color of law.  Specifically, Defendant Stevens failed to train Defendant Arana and/or reprimand him for violating Plaintiffs' constitutional rights by retaliatory arrest.  Defendant Stevens' actions, therefore, amount to a cause and ratification of Defendant Arana's conduct.

79.    Defendant Stevens deprived Plaintiffs of Plaintiffs' right to take video footage protected by the First and Fourteenth amendment.

80.    Defendant King, in her official capacity as superintendent of LAUSD failed to implement proper training protocols for LAUSDPF police officers, specifically in dealing with media members covering stories around schools and LAUSDPF failed to take any corrective action as to Defendant Arana.  Defendant King's actions, therefore, amount to a cause and ratification of Defendant Arana's conduct.

81.    Defendant King deprived Plaintiffs of Plaintiffs' right to take video footage protected by the First and Fourteenth amendment.

82.    As a direct and proximate result of defendants actions, described in this complaint, plaintiffs have suffered injury, in that Plaintiff Navarrete's arm and shoulder were severally injured and remain injured. She also has suffered, and continues to suffer emotional distress. Defendants injured Castenada by depriving him of his constitutional rights, detaining him for twenty minutes, and causing him emotional distress, and injury to his dignitary.

HENNIG
RUIZ P.C.

-18-

83.     In acting as is alleged in this complaint, Defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for plaintiffs' federally protected rights.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983:  UNLAWFUL RESTRAINT ON THE RIGHT TO FREE SPEECH IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

**(Against Defendant Arana in his personal capacity, Defendant Stevens in his personal capacity, and Defendant King in her official capacity.)**

84.     As a separate and distinct cause of action, Plaintiffs complain and re-allege all the allegations contained in this complaint, and incorporate them by reference into this cause of action as though fully set forth herein, excepting those allegations which are inconsistent with this cause of action.  Plaintiffs bring this cause of action against Defendant Arana in his personal capacity, Defendant Stevens in his personal capacity, and Defendant King in her official capacity.

85.     Defendant Arana, as a police officer, in uniform acted under the color of law.  Specifically, Arana asserted his authority by 1) threatening to arrest both plaintiffs if they attempted to gather footage; 2) physically preventing Plaintiffs from filming and 3) threatening to use his authority to have Plaintiff Navarrete's press pass removed and thus prevent her from taking video footage and, therefore, acting as a reporter, anywhere in Los Angeles.

86.     Defendant Arana deprived Plaintiffs of Plaintiffs' right to free speech, which includes the right to engage in press activity such as video journalism while on a public sidewalk wearing an LAPD issued press pass. Plaintiffs' rights to engage in such press activity is contained in the First and Fourteenth Amendments to the United States Constitution.  Specifically, Defendant Arana physically and without warning knocked Navarrete's camera away from her while she was filing,

HENNIG
RUIZ P.C.

-19-

ordered her to put down her camera, and then injured her by violently pulling her arms behind her back.  Officer Arana then threatened to use his connections with LAPD to have Plaintiff Navarrete's press pass taken away. Arana also unlawfully detained Plaintiff Castenada by grabbing his hands while he was preparing to film the scene.  Defendant Arana also deprived Plaintiffs of their free speech and press rights by threatening to arrest both Plaintiffs if they did not pack up and leave, without taking any footage.  This threat was a deliberate attempt to both chill and physically prevent Plaintiffs' exercise of their First Amendment press rights to take video footage, and represents a type of prior restraint on the exercise of their First Amendment press right to produce video news content for broadcast purposes. Plaintiffs' right to act as press is contained in the First and Fourteenth Amendments to the United States Constitution and, under *New York Times v. Sullivan* receives heightened protections when prior restraint is involved.

87.     Plaintiffs are informed and believe and thereon allege, that the unconstitutionality of Defendant Arana's acts was a matter of well established law at the time of those actions, such that a reasonable law enforcement officer would have known such actions violate Plaintiffs' constitutional rights.

88.     Defendant Stevens, as a police officer and supervisor acted under the color of law.  Specifically, Stevens failed to train Arana and/or reprimand him for violating Plaintiffs' constitutional rights associated with journalism and free speech.  Plaintiffs are informed and believe, and thereon allege Stevens never informed Defendant Arana that media personal, with credentials are allowed to film from a public sidewalk.  Plaintiffs are further informed and believe, and thereon allege Defendant Stevens never trained Defendant Arana on the appropriate response when a citizen asserts the right to free speech.  Defendant Stevens abridged and deprived Plaintiffs of their constitutional rights through his own acts and omissions.  Defendant Stevens' actions, therefore, amount to a cause and ratification of Defendant Arana's conduct.

Hennig
Ruiz p.c.

-20-

89.     Defendant King, in her official capacity as superintendent of LAUSD failed to implement proper training protocols for LAUSDPF police officers, specifically in dealing with media members covering stories around schools. Defendant King, as being in charge of LAUSDPF, also failed to take appropriate corrective action after these events involving Plaintiffs were made known to LAUSDPF.  Defendant King's actions, therefore, amount to a cause and ratification of Defendant Arana's conduct.

90.     Defendant King deprived Plaintiffs of Plaintiffs' right to free speech. Specifically, she failed to implement proper training protocols for LAUSDPF police officers, specifically in dealing with media members covering stories around schools.  King abridged and deprived Plaintiffs of their constitutional right through her and/or her predecessor in office's acts or omissions. This right in contained in the First and Fourteenth Amendments to the United States Constitution.

91.     Plaintiffs seek only injunctive relief from Defendant King in the form of mandatory training for LAUSDPF officers in proper use of force and proper practices related to media coverage of crime scenes.

92.     Plaintiff Navarrete still works in video journalism and visits crime scenes daily. Without proper training she will continue to feel distressed and chilled in the exercise of her free speech rights when covering stories at or near LAUSD schools.

93.     As a direct and proximate result of defendants' actions, described in this complaint, plaintiffs have suffered injury and damage in that Plaintiff Navarrete's arm and shoulder were severally injured and remain injured. Her injury has subsequently made it more difficult to exercise her free speech rights as a photo journalist. She also has suffered, and continues to suffer emotional distress. Defendants injured Castenada by depriving him of his constitutional rights, detaining him for twenty minutes, and causing him emotional distress, and injury to

///

HENNIG
RUIZ P.C.

-21-

his dignitary.  Defendants prevented both Plaintiffs from covering the story at the location and on the date in question.

94.    In acting as is alleged in this complaint, defendants acted knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiffs' federally protected rights.

WHEREFORE, plaintiffs pray judgment against defendants as follows:

1.    For compensatory damages, in an amount to be determined according to proof at trial;

2.    For punitive damages, in an amount to be determined according to proof at trial.

3.    For reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

4.    For costs of suit incurred in this action;

5.    For injunctive relief in the form of mandatory training for all LAUSDPF officers in the proper use of force and proper practices related to media coverage and officer inter actions with video journalists; and

6.    For such other and further relief as deemed just and proper by this Court.

1  Dated: April 14, 2016                    HENNIG RUIZ P.C.

2
                                                    /s/
3

4                                          _____
                                           Rob Hennig
5                                          Samuel Marion Brown
                                           Attorneys for Plaintiffs MARCELLA
6                                          NAVARETTE and JOSE CASTENADA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIG
RUIZ P.C.

1

## DEMAND FOR JURY TRIAL

2

3          Plaintiff demands trial by jury in this matter

4

5

6    Dated: April 14, 2016                HENNIG RUIZ P.C.

7

8                                              /s/

                                        _____
9                                       Rob Hennig
                                        Samuel Marion Brown
10                                      Attorneys for Plaintiffs MARCELLA
                                        NAVARRETE and JOSE CASTENADA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HENNIG
RUIZ P.C.

-24-